_____

**Case No. 25-30020**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
NEW ORLEANS, LOUISIANA**

**CHARLES CHANDLER,**

**PETITIONER – APPELLANT**

**v.**

**TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY,**

**RESPONDENT – APPELLEE**

_____

**Appeal from the United States District Court for the
Western District of Louisiana
Lafayette, Louisiana
(U.S.D.C. No. 6:23-CV-677)**

———————

**APPELLANT'S BRIEF**

———————

**JUSTIN CAINE HARRELL, ESQ.**
**Attorney for Defendant—Appellant**
**LSBA 31471**
**1100 Poydras Street**
**Suite 2900**
**New Orleans, Louisiana 70163**
**504-585-7329**
**504-324-0145** *facsimile*

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons may have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

APPELLANT:                                      Mr. Charles Chandler

APPELLEE:                                       Warden Tim Hooper
                                                Louisiana State Penitentiary

DISTRICT COURT JUDGE:                           Hon. David C. Joseph

MAGISTRATE JUDGE:                               Hon. Carol B. Whitehurst

COUNSEL FOR DEFENDANT/APPELLANT:    Justin Caine Harrell, Esq.

COUNSEL FOR STATE OF LOUISIANA:     Walter James Senette, Jr., Esq.
                                                Wallace Claire Howington, Esq.


                                                /s/ Justin Caine Harrell
                                                JUSTIN CAINE HARRELL, ESQ.

2

## STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34, Appellant requests oral argument, believing that oral argument would be useful to the Court in resolving the issues raised in this appeal. Appellant's arguments involve this Circuit's interpretation and application of U.S. Supreme Court authority, namely the continued viability of the implied juror bias doctrine and its application in the "extreme situations" warned about by Justice Sandra Day O'Connor in her concurring opinion in *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). Appellant's issues are of significant importance to the lower courts throughout this Circuit and some explication through oral argument would undoubtedly aid this Court in its resolution of the issue.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** 2

**STATEMENT CONCERNING ORAL ARGUMENT** 3

**STATEMENT OF JURISDICTION** 4

**TABLE OF AUTHORITIES** 5

**STATEMENT OF JURISDICTION** 8

**STATEMENT OF RELATED CASES** 9

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** 10

**STATEMENT OF THE CASE** 11

**SUMMARY OF THE ARGUMENT** 15

**ARGUMENT**

Jurisdiction and Standard of Review 17

The Doctrine of Implied Juror Bias is Clearly Established Federal Law as set forth by the U.S. Supreme Court 18

The Personal Secretary of the District Attorney of the prosecuting agency leading Appellant's state trial was Impliedly Biased as a matter of law 29

Trial Counsel was Ineffective for permitting an Impliedly Biased Juror to be seated on Appellant's Jury 31

**CONCLUSION** 40

**CERTIFICATE OF SERVICE** 41

**CERTIFICATE OF COMPLIANCE** 42

# TABLE OF AUTHORITIES

## CASES

*Andrews v. Collins*, 21 F.3d 612 (5th Cir. 1994)     18, 22-23

*Austin v. Cain,* 660 F.3d 880 (5th Cir. 2011)     17

*Brooks v. Dretke*, 418 F.3d 430 (5th Cir. 2005)     19, 23-24

*Buckner v. Davis*, 945 F.3d 906 (5th Cir. 2019)     25, 28-29

*Craaybeek v. Lumpkin*, case no. 19-20273 (5th Cir. June 17, 2021)     9, 25

*Dennis v. United States,* 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950)     25-27

*Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001)     16

*Koon v. Cain*, 277 Fed. Appx. 381 (5th Cir. 2008)     32

*Lackey v. Johnson,* 116 F.3d 149 (5th Cir. 1997)     17

*Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964)     18, 20

*McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 104 S. Ct. 845, 78 L.Ed.2d 663 (1984)     18

*Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)     17

*Morales v. Thaler*, 714 F.3d 295 (5th Cir. 2013)     25

*Parker v. Gladden*, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966)     16

*Remmer v. United States*, 350 U.S. 377, 76 S. Ct. 425, 100 L.Ed. 435 (1956)     18

*Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)     *passim*

*Solis v. Cockrell*, 342 F.3d 392 (5th Cir. 2003)     19, 23

*State ex rel. Charles Chandler v. State of Louisiana*, case no. 22-KW-572   13
(La. App. 1 Cir. Sept. 15, 2022)

*State v. Chandler*, 217 So.3d 359 (La. 2017)     12

*State v. Chandler*, 240 So.3d 950 (La. App. 1 Cir. 2017)     12

*State v. Chandler*, 362 So.3d 347 (La. 2023)     13

*State v. Chandler*, case no. 15-1493 (La. App. 1 Cir. Feb. 24, 2016)     12

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674   31-32
(1984)

*U.S. v Martinez-Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792   16, 32
(2000)

*United States v. Abreu,* case no. 21-60861 (5th Cir. Jan. 18, 2023)     9, 25

*United States v. Bishop*, 264 F.3d 535 (5th Cir. 2001)     18-19, 23

*United States v. Kimler,* 150 F.3d 429 (5th Cir. 1998)     17

*United States v. Scott,* 854 F.2d 697 (5th Cir. 1988)     18, 22

*United States v. Wood*, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936)     18, 20

*Uranga v. Davis*, 893 F.3d 282 (5th Cir. 2018)     27-28

*Virgil v. Dretke,* 446 F.3d 598 (5th Cir. 2006)     16, 35-38

**FEDERAL STATUTES**

28 U.S.C. § 2253                                                                6

28 U.S.C. § 2254                                                             6, 16

**RULES**

Federal Rules of Appellate Procedure, Rule 22                    6

## **STATEMENT OF JURISDICTION**

This court has jurisdiction over this appeal pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). This is an appeal of the District Court's December 20, 2024 Judgment denying Appellant, Charles Chandler's (hereinafter "Appellant"), Habeas Petition brought pursuant to 28 U.S.C. § 2254. ROA.569.

On January 24, 2025, the District Court issued a Certificate of Appealability, finding that reasonable jurists could debate whether the doctrine of implied bias represents clearly settled federal law as set forth by the U.S. Supreme Court and whether counsel was ineffective for permitting District Attorney Bofill Duhé's personal secretary to serve as a member of Appellant's petit jury in a case prosecuted by Duhé's office. ROA.586-587.

## **STATEMENT OF RELATED CASES**

As  Appellant contends that the doctrine of implied juror bias is settled law in this Circuit, he is aware of no specific cases, in state or federal court, that are in any way related to or potentially conflicting with the present appeal. However, Appellant submits that the doctrine of implied bias is frequently an issue raised in federal filings in this Circuit and throughout the nation. For recent Fifth Circuit authority touching on this issue. *See e.g., United States v. Abreu,* case no. 21-60861 (5th Cir. Jan. 18, 2023) ("[a] juror may be actually biased or, in 'extreme situations,' bias may be implied as a matter of law"); *Craaybeek v. Lumpkin*, no. 19-20273 (5th Cir. June 17, 2021) ("When considering claims of implied bias, this court routines looks to the examples in Justice O'Connor's concurrence [in *Smith v. Phillips*].")

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1. Whether the U.S. District Court, Western District of Louisiana, erred in denying Appellant's Petition for Habeas Corpus, in part, upon the finding that "the implied bias doctrine has not been addressed in a uniform or clear manner either by the Supreme Court or the Fifth Circuit."

2. Whether the personal secretary of the District Attorney of the prosecuting agency leading Appellant's state trial—who when asked if she could give Appellant a fair trial, responded "I'm not saying nothing"—was impliedly biased as a matter of law.

3. Whether Appellant's trial counsel was ineffective in permitting an impliedly biased juror to sit on Appellant's petit jury, such that counsel's performance was deficient and Appellant was prejudiced by the denial of his right to a fair and impartial jury as guaranteed by the Sixth Amendment.

**STATEMENT OF THE CASE**

The following fact is inescapable: The District Attorney's Office for the Louisiana 16th Judicial District paid a member of Appellant's petit jury during Appellant's trial for Second-Degree Murder. Juror Lynette Daigle Rachal was not just an employee of *a* district attorney's office; she was *the* personal secretary of *the* District Attorney, the late Mr. Bofill Duhé. Juror Rachal's boss was the direct supervisor of Anthony Saleme, the assistant district attorney who tried the case. So cozy was this relationship that Mr. Saleme did not feel the need to ask Juror Rachal any questions during *voir dire* instead directing her to: "please tell my boss I love my job and I'm doing a wonderful job." ROA.365. When asked by defense counsel if returning a verdict of not guilty would make for awkward moments at the office, Juror Rachal responded that there "[m]aybe some funny feelings." ROA.380. Even the trial court got in on the fun. When Rachal noted that she knew all the lawyers closely, including defense counsel Richard Spears, the Court inquired: "Well, if you've been knowing him that long, do you really think you could give his client a fair trial?" ROA.348. Rachal responded: "I'm not saying nothing." *Ibid*.

And yet, Juror Rachal was selected without so much as a challenge for cause from either party. On May 7, 2015, the jury returned a verdict of guilty as charged to one count of Second-Degree Murder. ROA.91. The jurors were not polled and the exact verdict tally remains unknown. ROA.1252.

Determining that the evidence was insufficient to sustain a verdict for Second-Degree Murder, the trial court granted a defense motion for post-verdict judgment of acquittal on June 25, 2015, finding Appellant guilty of the responsive verdict of Manslaughter. ROA.95. The State appealed. In an unpublished opinion, the First Circuit reversed the trial court's ruling. *State v. Chandler*, Case No. 15-1493 (La. App. 1 Cir. February 24, 2016) (unpublished). The Louisiana Supreme Court denied writs on March 31, 2017. *State v. Chandler*, 217 So.3d 359 (La. 2017). Appellant was thereafter sentenced to life in prison.

The First Circuit upheld his conviction and sentence on December 21, 2017. *State v. Chandler*, 240 So.3d 950 (La. App. 1 Cir. 2017). Appellant did not seek writs from the Louisiana Supreme Court.

On December 10, 2018, Appellant filed an Application for Post-Conviction Relief, raising two iterations of his juror bias claim: First, that the inclusion of a member of the District Attorney's Office on his jury represented a Due Process violation poisoning the entire trial[1]; second, that trial counsel was ineffective for failing to use a preemptory challenge or remove the juror for cause.

On April 1, 2022, Appellant's matter returned to the trial court for an evidentiary hearing. After hearing from several witnesses, the District Court denied relief.

---

[1] Petitioner's stand-alone Due Process juror bias claim was subsequently dismissed on state procedural grounds.

Appellant again sought writs. On September 15, 2022, in a two-to-one ruling, the First Circuit Court of Appeal reversed the trial court, holding: "Counsel's performance was deficient for failing to challenge for cause the prospective juror who was employed as the secretary for the District Attorney for the 16th Judicial District Court." ROA.2376; *see also State ex rel. Charles Chandler v. State of Louisiana*, case no. 2022-KW-572 (La. App. 1 Cir. Sept. 15, 2022). The Court further concluded that "The seating of such a juror is presumptively prejudicial, as relator cannot otherwise show what influence the juror's presence had on jury deliberations due to the jury shield law. See La. Code Evid. art. 606( B)." *Ibid*. The State sought writs.

On May 5, 2023, the Louisiana Supreme Court vacated the First Circuit's judgment and reinstituting Appellant's conviction, holding that Appellant failed to establish prejudice.

> The seating of the juror alone does not establish prejudice under *Strickland*. The court of appeal essentially presumed prejudice, effectively treating this situation as one where there is a total deprivation of the right to counsel or an active conflict of interest impairing counsel's performance. Such a departure from *Strickland* is not consistent with the jurisprudence, which has consistently analyzed the decision not to exercise a cause challenge under *Strickland's* prejudice standard.

ROA.2491-2492; *see also State v. Chandler*, 362 So.3d 347 (La. 2023). The Louisiana Supreme Court failed to address whether bias could be presumed based

13

upon Juror Rachal's close association with and employment by the prosecuting agency.

On May 20, 2023, Appellant submitted a Petition for Habeas Corpus in the U.S. District Court for the Western District of Louisiana. On October 9, 2024, the U.S. Magistrate Judge recommended granting Appellant's Petition.

> After careful consideration, this Court agrees with the Petitioner's contention that if the implied bias doctrine, as adopted by courts of this Circuit, is to mean anything, it is that juror Lynette Rachal, a twenty-five year veteran of the District Attorney's Office of the 16th Judicial District and the personal secretary of the District Attorney represents the highest echelon of those "extreme situations" warned about by Justice O'Connor. The last reasoned decision on counsel's ineffectiveness found that his conduct fell "below objective standards." This ruling was not clearly contrary to federal law and deserved deference under AEDPA.

ROA.506; *see also Chandler v. Hooper*, 6:23-CV-00677, Doc. No.19 (W.D. La. Oct. 9, 2024).

The District Court disagreed. On December 20, 2024, the Court rejected the Magistrate's conclusions, holding, in part:

> [I]t is unclear whether the implied bias doctrine is clearly established federal law, as determined by the Supreme Court of the United States. … Moreover, it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

ROA.566-567; *see also Chandler v. Hooper*, CIVIL 6:23-cv-00677 (W.D. La. Dec 20, 2024) (internal quotes omitted.) Respectfully, the District Court failed to identify

14

and apply the proper legal standards and committed clear error regarding the state court proceedings.

## SUMMARY OF ARGUMENT

Despite a decade of litigation, the facts and law in Appellant's matter remain shockingly clear and straightforward: Juror Lynette Rachal was a member of the District Attorney's Office of Louisiana's 16th Judicial District. Her direct supervisor was District Attorney Bo Duhé. She was paid by the same law enforcement agency responsible for Appellant's prosecution. During jury selection, the State did not even deign to ask Rachal any questions. To defense counsel's query, Rachal admitted that there might be "some funny feelings" at the office should she vote to acquit Appellant. To the Court's inquiry about providing Appellant with a fair trial, Rachal refused to answer directly.

Juror Rachal's employment belongs in that class of "extreme situations" justifying the application of the implied bias doctrine. According to Justice O'Connor, these include circumstances where the juror is an actual employee of the prosecuting agency, a close relative of one of the participants in the trial or was a witness or somehow involved in the criminal transaction. Justice O'Connor maintained that "[w]hether or not the state proceedings result in a finding of 'no bias,' the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances." *Smith*, 455 U.S. at 221.

15

As an impliedly biased juror, defense counsel was ineffective for seating the juror on Appellant's jury without a challenge for cause. "If counsel's decision not to challenge a biased venireperson could constitute sound trial strategy, then sound trial strategy would include counsel's decision to waive, in effect, a criminal defendant's right to an impartial jury." *See generally*, *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001). Counsel's *sua sponte* decision to forfeit Appellant's right to an impartial jury is *per se* ineffective. *Parker v. Gladden*, 385 U.S. 363, 366; 87 S. Ct. 468; 17 L. Ed. 2d 420 (1966) (a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors;") *see also U.S. v Martinez-Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (recognizing that the "seating of any juror who should have been dismissed for cause…would require reversal.")

The District Court erred in rejecting the Magistrate's Report and Recommendation and denying Habeas relief. The District Court incorrectly concluded that Appellant's state court verdict was unanimous, misinterpreted the weight of the evidence presented at trial, failed to recognize that the doctrine of implied bias is settled law in this Circuit, and completely ignored this Court's precedential authority as presented in *Virgil v. Dretke,* 446 F.3d 598, 613 (5th Cir. 2006).

## ARGUMENT

### 1. Jurisdiction and Standard of Review

In order to obtain review from this Court of the District Court's denial of Appellant's Habeas claims, an appellant must first receive a Certificate of Appealability or "COA." *See* 28 U.S.C. § 2254(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36; 123 S. Ct. 1029; 154 L. Ed. 2d 931 (2003). Upon receipt, the Court's review is limited to issues for which a COA has been granted. *United States v. Kimler*, 150 F.3d 429, 430 (5th Cir. 1998); *Lackey v. Johnson*, 116 F.3d 149, 151-52 (5th Cir. 1997). "In an appeal of the district court's denial of habeas relief, 'this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standard of review that the district court applied to the state court decision.'" *Austin v. Cain*, 660 F.3d 880, 884 (5th Cir. 2011).

In the instant case, Appellant sought a Certificate of Appealability from the District Court on the basis that:

> [R]easonable jurists could debate whether the District Attorney's personal secretary was impliedly bias and therefore unfit as a matter of law to sit on Petitioner's petit jury thus making Petitioner's trial counsel's failure to challenge her for cause ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny.

ROA.571. The District Court granted Appellant's request without expansion or restriction. ROA.586-587. Accordingly, the assignment of error before this honorable

17

Court involves whether Juror Lynette Rachal, a twenty-five year veteran of the District Attorney's Office for the 16th Judicial District, was implied biased and unfit for juror service and, whether trial counsel's failure to challenge Rachal for cause was ineffective resulting in the forfeiture of Appellant's right to an impartial jury as guaranteed by the Sixth Amendment.

### 2. The Doctrine of Implied Juror Bias is Clearly Established Federal Law as set forth by the U.S. Supreme Court

The doctrine of implied bias has never been in doubt, either in the U.S. Supreme Court or as adopted and interpreted in this Circuit. The doctrine allows a reviewing court to presumptively conclude a juror's implicit bias in "extreme situations" based upon his or her close proximity to the persons and/or events at the heart of the litigation. The foundational, precedential opinions solidifying the doctrine in American jurisprudence have never been abandoned.

From *United States v. Wood*, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936) to *Remmer v. United States* ("*Remmer II*"), 350 U.S. 377, 76 S. Ct. 425, 100 L.Ed. 435 (1956), from *Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964) to *Smith*, *supra*, and *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 104 S. Ct. 845, 78 L.Ed.2d 663 (1984), the U.S. Supreme Court has never abrogated the doctrine. From *United States v. Scott,* 854 F.2d 697 (5th Cir. 1988) to *Andrews v. Collins*, 21 F.3d 612 (5th Cir. 1994) to *United States v. Bishop*, 264 F.3d

535 (5th Cir. 2001), from *Solis v. Cockrell*, 342 F.3d 392 (5th Cir. 2003) to *Brooks v. Dretke*, 418 F.3d 430 (5th Cir. 2005) and more recently to *Craaybeek*, *supra*, and *United States v. Abreu, supra*, this Court has never rejected the doctrine or held that it not clearly established federal law.

The seating of an actual employee of the prosecuting agency—in this case the personal secretary of the District Attorney for the Parish of St. Mary—represents the "extreme situations" that Justice O'Connor warned about in *Smith*. As a juror, Rachal was forced to place her duty of neutrality against her pecuniary and professional interests. She did not even pretend this was possible. When asked if she could give Appellant a fair trial, she quipped: "I'm not saying nothing." ROA.348. As a matter of law, Rachal's bias is presumed.

Though Appellant's counsel later testified on state post-conviction to having a "gut feeling" that Rachal would make a "stand-up" juror, he could evince no cogent strategy for his decision not to challenge her. Counsel admitted that his approach "seems crazy," that it "could throw a monkey wrench" into the trial, rendering it "unclean." ROA.2104-2105. However, as a result of counsel's lackadaisical and moronic approach an impliedly biased juror—who could not, when asked, even muster a lukewarm pledge of impartiality—sat on Appellant's jury, denying him the fair and impartial jury to which he was entitled.

In upholding Appellant's conviction and denying him state post-conviction relief, the Louisiana Supreme Court failed to address whether so close a relationship with the parish's chief prosecutor reasonably gave rise to Juror Rachal's implied bias. Without resolving the question of Rachal's partiality, the Supreme Court simply held that prejudice could not be established. However, as this Court has held, the deficient performance of counsel in failing to secure an impartial jury can leave a criminal defendant with a jury "that could not constitutionally convict, perforce establishing *Strickland* prejudice with its focus upon reliability." *Virgil*, 446 F.3d at 614.

### a. *The Doctrine of Implied Bias is Clearly Established Federal Law*

The Doctrine of Implied Bias remains settled constitutional law as set forth by the U.S. Supreme Court. It can be traced to the earliest years of the Republic. In the modern era, the doctrine was first identified by the Supreme Court in *United States v. Wood*, *supra*, defining it as "bias conclusively presumed as [a] matter of law," or, to put it another way, "bias attributable in law to the prospective juror regardless of actual partiality." The U.S. Supreme Court expressly relied upon the implied bias doctrine thirty years later in *Leonard v. United States*, *supra*. In *Leonard*, the Supreme Court invalidated the petitioner's conviction because five members of his petit jury were present when the petitioner was convicted in a previous, unrelated case. The jurors' presence at the petitioner's first trial rendered them incapable of serving on the petitioner's second trial, irrespective of the jurors' actual bias.

20

The preeminent case on implied basis is *Smith v. Phillips, supra*. At issue in *Smith* was a juror who applied for employment with the district attorney's office while sitting as a juror in the petitioner's criminal trial. During a post-verdict hearing, the juror denied that his pending employment application had any effect on his deliberations. The majority neither rejected nor adopted the implied basis doctrine. However, the Court did conclude that the remedy available to Smith was "a hearing in which the defendant has the opportunity to prove actual bias." *Ibid*. at 215.

Justice O'Connor concurred in the result but wrote separately to clarify that the *Smith* holding "does not foreclose the use of 'implied bias' in appropriate circumstances." *Smith*, 455 U.S. at 221 (O'Connor, J. concurring.) She noted that the Supreme Court "has used implied bias to reverse a conviction" in the past, citing the Court's ruling in *Leonard*, *supra*. *Ibid.* at 223. While finding that "in most instances a postconviction hearing will be adequate to determine whether a juror is biased," Justice O'Connor demonstrated concern for those "extreme situations" where even a post-verdict hearing would be insufficient.

> I am concerned, however, that in certain instances a hearing may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice. While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. *Some examples might include a revelation that the juror is an actual employee of the prosecuting agency*, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or

21

> somehow involved in the criminal transaction. Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.

*Ibid.* at 222 [emphasis added].

Accordingly, it was only because the *Smith* majority did not abolish the implied bias doctrine that Justice O'Connor joined in the opinion: "Because there may be circumstances in which a postconviction hearing will not be adequate to remedy a charge of juror bias," Justice O'Connor concluded, "it is important for the Court to retain the doctrine of implied bias to preserve Sixth Amendment rights. *I read the Court's opinion as not foreclosing the use of implied bias in appropriate situations, and, therefore, I concur.*" *Ibid.* at 224 [emphasis added].

The doctrine of implied bias has been adopted by this Court beginning with *United States v. Scott*, *supra*. In *Scott*, this Court cited to O'Connor's concurrence before finding "a sufficient implication of [the juror's] bias to require a new trial." *Ibid.* at 620. In *Andrews v. Collins*, *supra*, the Court adopted Justice O'Connor's "extreme situations" presumption.

> As an initial matter, we note that "[t]he Supreme Court has never explicitly adopted or rejected the doctrine of implied bias." …*However, there are some extreme situations that would justify a finding of implied bias.* Some examples might include a revelation that the juror is *an actual employee of the prosecuting agency*, that the juror is a close relative of one of the participants in the trial or the criminal transaction, of that the juror was a witness of somehow involved in the criminal transaction.

22

*Andrews*, 21 F.3d at 620 [emphasis added]. In *United States v. Bishop, supra,* the Court held:

> In the majority of situations, the party seeking a new trial must demonstrate bias through admission or factual proof. Bias may, however, be implied or presumed in extreme circumstances, including when the juror is employed by the prosecuting agency, is a close relative of a participant in the trial, or is somehow involved in the transaction that is the subject of the trial.

*Bishop*, 264 F.3d at 554. Thereafter, in *Solis v. Cockrell*, 342 F.3d 392 (5th Cir. 2003), this Court held that "[t]he bias of a prospective juror may be actual or implied; that is, 'it may be bias in fact or bias conclusively presumed as [a] matter of law.'" *Ibid*. at 395.

Perhaps this Court's most thorough endorsement of the implied bias doctrine and O'Connor's "extreme situations" arrives in *Brooks v. Dretke*, 418 F.3d 430, 433 (5th Cir. 2005). In *Brooks*, this Court granted Habeas relief for a state prisoner facing execution in Texas after it was discovered that a member of Brook's sentencing jury had been arrested for illegally carrying a firearm through the courthouse security checkpoint. The State sought rehearing, asserting—as did the District Court herein—that "this Court relied upon Justice O'Connor's concurrence in *Smith v. Phillips*. Her statements endorsing the doctrine of inferred bias were not considered and adopted by the majority…."

In rejecting the State's argument, the *Brooks* Court held:

23

Nothing in *Smith* rejects the doctrine of implied bias, as illustrated by Justice O'Connor's concurring opinion, and the full history of *Remmer* bears this out. *Remmer I* involved only the defendant's bare accusations of improper juror contact. Recognizing the seriousness of the charges, if true, the Supreme Court remanded for an evidentiary hearing—the "hearing" remedy appropriated by *Smith*—to put on record "what actually transpired [and] whether the incidents that may have occurred were harmful or harmless." Nothing in *Remmer I* rejects the notion that sometimes courts must refuse to accept a juror's assurances of impartiality; it was only the posture of *Remmer I*, with the undeveloped record, that prevented the Court from deciding that question on the merits.

Following remand and an evidentiary hearing, the lower courts concluded the incident was harmless, and the Supreme Court granted certiorari a second time. It was then, in *Remmer II*, that the Court found, now with full understanding of the incident, that the evidence "reveals such a state of facts that neither [the juror] *nor anyone else* could say that he was not affected in his freedom of action as a juror." There, a juror in a tax evasion case was offered a bribe in return for a favorable defense verdict. The juror reported the matter to the trial judge, who first disregarded it as a joke but later informed the FBI. An FBI agent interviewed the juror, but to the juror, it was not clear whether the government was contemplating prosecuting the juror for his role. The juror later testified that during the course of the trial, he was "under a terrific pressure." On these facts, the Court quickly concluded no person could serve as an impartial juror. The phrase "nor anyone else" is critical here: *Remmer II* illustrates that there are certain factual circumstances, as illuminated by Justice O'Connor's concurring opinion in *Smith*, in which no reasonable person could not be affected in his actions as a juror and in which the Constitution refuses to accept any assurances to the contrary. In short, *Remmer II* is an application of the implied bias doctrine; it is clearly established Federal law as determined by the Supreme Court.

*Brooks*, 444 F.3d at 330-332.

The *Brooks* ruling has continued to be upheld by this Circuit. As recently as

January 2023, this Court held that "[a] juror may be actually biased or, in 'extreme situations,' bias may be implied as a matter of law." *United States v. Abreu*, *supra*; *See also, Craaybeek v. Lumpkin*, *supra* ("When considering claims of implied juror bias, this court routinely looks to the examples in Justice O'Connor's concurrence"); *Buckner v. Davis*, 945 F.3d 906 (5th Cir. 2019) ("Where a juror has a close connection to the circumstances at hand, however, bias may be presumed as a matter of law"); *Morales v. Thaler*, 714 F.3d 295 (5th Cir. 2013) ("This court has held, however, that the doctrine of implied bias is clearly established Federal law as determined by the Supreme Court.")

Accordingly, the doctrine of implied bias and the "extreme situations" standard continued to be upheld by this Court as clearly established federal law.

> b. *The District Court erred in concluding that the Doctrine of Implied Bias "has not been addressed in a uniform or clear manner either by the Supreme Court of the Fifth Circuit"*

The District Court erroneously concluded that the doctrine of implied bias is not clearly established federal law as determined by the U.S. Supreme Court or as adopted by this Circuit. In two lengthy footnotes, the lower court attempts to highlight distinguishing caselaw, none of which is availing.

First, the District Court cites *Dennis v. United States,* 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950) for finding that "[a] holding of implied bias to disqualify jurors because of their relationship with the Government is no longer permissible…"

ROA.567. However, *Dennis* is distinguishable on its face. In *Dennis*, the petitioner, a confessed Communist, sought a broad exception to a federal statute that qualified employees of the District of Columbia and the federal government to serve as jurors without which D.C. courts could scarcely empanel a jury. The *Dennis* Court noted that so absolute a ban in cases with a Communist-defendants was "tantamount…to imput[ing] bias to all storeowners and householders in cases of larceny or burglary." *Dennis*, 339 U.S. at 167. This is far beyond the argument advanced by Appellant herein.

The ellipses appearing in the District Court's parenthetical quote are telling. They obstruct the narrow parameter of the *Dennis* ruling. The full quote is:

> Ultimately, petitioner's contentions amount to this: since he is a Communist, in view of all the surrounding circumstances, an exception must be carved out of the rule laid down in the statute, and construed in *Wood* and *Frazier,* that there is no implied bias by reason of Government employment. Thus, the rule would apply to anyone but a Communist tried for contempt of a congressional committee, but not to a Communist. We think the rule in *Wood* and *Frazier* should be uniformly applied. *A holding of implied bias to disqualify jurors because of their relationship with the Government is no longer permissible.* **The Act** *makes no exception for distinctive circumstances.* It states that: "All…persons…, whether employed in the service of the government of the United States or of the District of Columbia…, shall be qualified to serve as jurors in the District of Columbia, and shall not be exempt from such service. . . ." Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury. *We adhere to our holding that the* **enactment of the statute** *is within* **the power of Congress***, and that therefore employees of the Federal Government are not challengeable solely by reason of their employment*.

*Ibid*. at 339 U.S. 171-172 [emphasis added].

*Dennis* was concerned with the application of a Congressional statute[2] that limited a broad application of the implied bias doctrine to *any* government employee in a case brought by the federal government. Admittedly, so broad an application of the implied bias doctrine would be untenable; it is for this reason that a statute was enacted to abrogate the implied bias doctrine. Given the existence of a Congressional statute authorizing jury service for government employees, a defendant attacking an employee-juror's qualification would have only one avenue: Actual bias.

Next, the District Court cites *Uranga v. Davis*, 893 F.3d 282 (5th Cir. 2018) for the proposition that the implied bias doctrine has not been adopted as clearly established in this Circuit. In *Uranga*, the petitioner was convicted of possession of methamphetamine. During the penalty phase, the State sought to enhance Uranga's sentence by establishing prior felonies and unadjudicated offenses. One such offense involved driving a vehicle onto someone's yard during a flight from law enforcement. As it turned out, that yard belonged to one of Uranga's jurors, who had not been previously aware of the connection. The juror advised the Court but ultimately maintained that he could remain impartial.

---

[2] 49 Stat. 682, D.C.Code, § 11-1420 (1940).

The *Uranga* Court neither expressly affirmed nor rejected the implied bias doctrine; it simply refused to revisit this Court's previous rulings on the subject. Instead, the *Uranga* Court analyzed the case with explicit reference to Justice O'Connor's concurring opinion in *Smith*. "The facts on which Uranga relies in this case to establish that he suffered presumed bias are outside the extreme genre of cases Justice O'Connor pointed to in her concurring opinion in *Smith v. Phillips* that would be trigger application of the implied bias doctrine." *Uranga*, 893 F.3d at 288.

In the case of *Uranga*, the tail wags the dog. While the Court may not have expressly reiterated the line of Fifth Circuit caselaw stretching back to *Scott* and *Andrews*, it could hardly have been said to call the doctrine into question. That the state court acted contrary to "clearly established" federal law places the onus on the petitioner to establish unimpeachable authority. If the doctrine of implied bias was anything other than clearly established federal law, the *Uranga* Court would have had no need to conclude that the petitioner's specific facts "did not fall in the same genre of cases given by Justice O'Connor." *Uranga*, 893 F.3d at 288. The very fact that the *Uranga* Court reached the merits of the appellant's argument—rather than dismissing it for want to clearly established federal law—is indication that this issue was considered settled by the *Uranga* panel.

This position is further supported by this Court's position in *Buckner, supra*. The *Buckner* Court began by reaffirming that the doctrine of implied bias is clearly

established law in this Circuit: "Where a juror has a close connection to the circumstances at hand…bias may be presumed as a matter of law." *Buckner*, 95 F.3d 910. However, because the facts of the case fell outside *Uranga*'s "extreme genre of cases" implying bias, the *Buckner* Court declined to "revisit[] whether this Court recognizes the implied bias doctrine as clearly establishes law." *Ibid.* at 915.

Accordingly, while the lower court cites both *Uranga* and *Buckner* as evidence of this Court's ambivalence toward implied bias, neither decision abrogates the doctrine. Instead, both Courts address the merits of the petitioner's matter while refusing to revisit this Court's previous adherence to the doctrine as clearly settled law.

### 2. The Personal Secretary of the District Attorney of the prosecuting agency leading Appellant's state trial was Impliedly Biased as a matter of law.

During *voir dire*, Ms. Lynette Daigle Rachal described herself as a "[s]ecretary at the DA's office" and acknowledged that she was "the secretary for the big cheese, the district attorney." ROA.379-380. She identified Mr. Duhé as her supervisor and prosecutor "Mr. [Anthony] Saleme's boss" whom she saw "everyday." *Ibid.* When asked if finding Petitioner not guilty would cause potential problems at the office, Juror Rachal replied that there might be "some funny feelings." *Ibid.* When asked if she could give Appellant a fair trial, she quipped: "I'm not saying nothing." ROA.348.

In Louisiana's 16th Judicial District, these equivocations did not elicit further inquiry regarding Rachal's fitness to serve. The State did not ask Juror Rachal any questions during *voir dire* instead directing her to: "please tell my boss I love my job and I'm doing a wonderful job." ROA.365. As for the trial court, the judge merely stated: "You're probably not going to get selected[3]." ROA.348, 379. Rachal responded: "Probably not." *Ibid.*

On state post-conviction, Rachal testified that she had worked for the District Attorney's Office for twenty-five years, first in the felony department, then in probation before assuming the role as Phil Haney's secretary. ROA.2080. "[W]hen Phil retired [in 2015], I became Mr. Duhe's secretary." ROA.2081. Rachal worked in close physical proximity to Mr. Duhé, seeing him on a daily basis. *Ibid.* In 2020, as in 2015, Mr. Duhé signed Rachal's bi-weekly paychecks, giving rise to the specter of a juror, charged with being impartial, being *paid* by one of the parties to the action. ROA.2081-2082. Juror Rachal was originally selected as an alternate. ROA.2082. On May 6, 2015, Rachal replaced Juror Lionel T. Brooks, Jr. after it was determined

---

[3] Ironically, both the State and defense challenged prospective juror Virginia Sutton, whose nephew was a victim of gun violence in March 2015.

> **Court:** Both of y'all, I agree with. This is a second degree murder case. And this is so—what she's going through is so fresh. And, you know, she really wants to be a good juror. *But knowing the nature—and humankind as it is, if she does fall short of being miraculous, it may fall short at the wrong time*. And I'm going to go ahead and find that—I'm going to grant your challenge for cause.

ROA.330-331.

that Brooks had a personal relationship with State witness Reginald James. *Ibid*.; *see also* ROA.142-143.

Having determined that implied juror bias is clearly established federal law, Juror/Personal Secretary Rachal squarely belongs in the class of "extreme situations" illustrated by Justice O'Connor. Rachal was an actual employee of the prosecuting agency and fitted with an inhuman task pitting her vested financial interests as an employee of the District Attorney's Office against her pledge of impartiality to Appellant. Neither Juror Rachal, nor anyone else in her impossible position, could maintain objective detachment notwithstanding their sincere belief otherwise.

### 3. Trial Counsel was Ineffective for permitting an Impliedly Biased Juror to be seated on Appellant's Jury

The basic parameters of an ineffective assistance claim are not in dispute. The defendant must first show that counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment of the U.S. Constitution." *Strickland,* 466 U.S. at 686. Next, the complainant must show that the deficient performance prejudiced his or her defense. This can be accomplished upon a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Ibid.* Where an alleged error is within the "ambit

of trial strategy" it cannot be relied upon to establish ineffectiveness of counsel. However, not every choice of counsel is automatically clothed in the presumption of a strategy. *See generally, Koon v. Cain*, 277 Fed. Appx. 381, 386 (5th Cir. 2008). Courts are instructed to recognize the distinction between strategic judgment calls and plain omissions and are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Ibid.*

The decision of whether to seat a biased juror is not a discretionary or strategic one. Trial counsel is not equipped to waive, *sua sponte*, his client's right to an impartial jury. The seating of a biased juror who should have been dismissed for cause requires reversal of the conviction. *Martinez-Salazar, supra.*

In the instant case, counsel evinced no logic, strategy, or reasoning at all behind his choice to allow the District Attorney's personal secretary to sit on his client's petit jury.

> **Q.** Are you familiar with Ms. Lynette Daigle Rachal?
>
> **A.** Yes, sir.
>
> **Q.** And how are you familiar with Ms. Rachal?
>
> **A.** I've just known her since she's been a secretary in the DA's office while I've been around.

**Q.** How many years, roughly?

**A.** I probably – I think she was here in St. Mary first before she went to the DA's office in Iberia to work for Phil Haney. So, I would say I've probably known who she was for 20 years.

\* \* \* \* \*

**Q.** And so you were aware that at the time that she sat on Mr. Chandler's jury she was being paid by your adversary, the district attorney's office?

**A.** Yes, sir.

**Q.** Did you challenge Ms. Rachal for cause?

**A.** I did not.

**Q.** And why did you not challenge her for cause?

**A.** Looking back, it seems crazy that I didn't. But at the time, I think I just had a gut feeling that – that she would be a stand-up juror, nothing more than that.

\* \* \* \* \*

**A.** To answer that question, I didn't use that challenge. And I could have back-stricken her. I suspected that the district attorney was going to be forced to use a peremptory challenge at that time. I was surprised that that didn't happen.

**Q.** That's an interesting point. So why did you feel that – and I can understand the strategy. But why did you feel that the state would ultimately have to burn a perempt?

**A.** For the very reason that we're here today, that it would – district attorneys – prosecutors are always looking out to make sure that something doesn't enter into the scope of the trial that could throw a monkey wrench into it. If I was the prosecutor, I would not have let her get on there. I'm not judging Mr. Saleme, but I'm just saying that I – I

said – I remember thinking when I didn't do it, I'm like, well, Tony's going to do it, and he didn't. Just because, as a prosecutor, it made the trial unclean.

**Q.** Unclean how? Can you elaborate?

**A.** The trial would be subject to being upset for this very reason that we're here today, that people would say that's – she had no business on that jury, you know, that it would bring up issues on appeal, on postconviction relief, and give, you know, reason for complaint later.

ROA.2104-2105.

Counsel took it upon himself to permit an impliedly biased juror to sit on his client's jury for a charge of Second-Degree Murder because counsel had a "gut feeling" that she would be impartial. However, counsel later concedes that his *ersatz* reasoning "seems crazy," that it "thr[e]w a monkey wrench into" the trial rendering it "unclean." Counsel utterly failed to move for a challenge for cause, though Louisiana Code of Criminal Procedure Article 797 and two hundred years of federal case law gave him the clear authority to do so. On post-conviction, counsel did not even intimate that he understood a challenge for cause was available. Instead, he had hoped the State would show sufficient integrity to protect the fact-finding function of the jury by removing one of its own employees. Counsel's trust—as his reasoning—was entirely misplaced.

The District Court erred in finding that the state supreme court did not act contrary to clearly established federal law. Applying the well-worn implied bias

doctrine would have resulted in a finding that Juror Rachal was presumptively biased. The seating of a biased juror would have proscribed Appellant's right to a fair and impartial jury. Where counsel suborned such an outcome, his performance would have been grossly deficient, thus meeting both prongs of *Strickland*.

This Court addressed an analogous situation in *Virgil v. Dretke*, *supra*. In *Virgil*, this Court granted Habeas relief to a Texas state prisoner after it was established that trial counsel failed to challenge for cause two jurors who "unequivocally expressed that they could not sit as fair and impartial jurors." *Virgil*, 446 F.3d at 613. This Court held:

> *Strickland's* prejudice inquiry is process-based: Given counsel's deficient performance, do we have confidence in the process afforded the criminally accused? "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Prejudice is presumed in a narrow category of cases, none of which are present here. Absent mechanical rules, "the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." We focus on ferreting out "unreliable" results caused by "a breakdown in the adversarial process that our system counts on to produce just results." Guiding our prejudice inquiry, the Supreme Court requires lower federal courts to "presume" that "the judge or jury acted according to law." Most importantly for our purposes, "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and *impartially* applying the standards that govern the decision." Even according the state court the deference warranted under AEDPA, these basic principles, encapsulated in *Strickland's* well-worn prejudice standard, were unreasonably applied by the state court when it denied Virgil's ineffective assistance of counsel claim.

35

Here, we are confronted with a situation in which, due to counsel's failure, two persons, each expressly stating that they were unable to serve as fair and impartial jurors, found themselves seated on the petit jury that convicted Virgil and sentenced him to thirty years in prison. We are required to presume "that the judge or jury acted according to law," yet the law mandates a juror willing to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." That did not occur here. Given the fundamental nature of the impartial jury and the consistent line of Supreme Court precedent enforcing it, we must conclude that "the result of [Virgil's trial] is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

*Ibid*. at 612-613.

Thus, while not finding prejudice presumed, the *Virgil* Court nonetheless granted relief upon the conclusion that Counsel's failure to challenge to admittedly biased jurors resulted in "a breakdown in the adversarial process that our system counts on to produce just results." Calling the jury box "a holy place," the *Virgil* Court concluded:

Taken together, we must say that we lack confidence in the adversarial process that resulted in Virgil's felony conviction and 30-year sentence. Sumlin and Sims unequivocally expressed their inability to serve as fair and impartial jurors in Virgil's case. No peremptory challenge was used; no challenge for cause attempted. By law, Virgil was prejudiced by the presence of partial jurors in violation of his Sixth and Fourteenth Amendment rights, and we consider the state court's decision to the contrary to be an unreasonable application of clearly established Federal law as determined by the Supreme Court. Expressed in *Strickland* terms, the deficient performance of counsel denied Virgil an impartial jury, leaving him with one that could not constitutionally convict, perforce establishing *Strickland* prejudice with its focus upon reliability.

36

*Ibid.* at 613-614.

Using *Virgil* as a guide, a similar result is warranted here. First, like trial counsel in *Virgil*, Petitioner's trial counsel evinced no strategy in seating Rachal and was seemingly unaware that he had the authority to challenge her for cause. Unless we supplant a "gut feeling" for sound trial strategy, counsel put forth no explanation for his failure to challenge Juror Rachal for cause or for his willingness to imperil Appellant's right to an impartial jury.

Second, the seating of a biased juror—whether actual or implied—resulted in the complete breakdown of the adversarial process. Juror Rachal was the District Attorney's personal secretary. She sat in judgment of a case the District Attorney was prosecuting, giving rise to the image of the District Attorney *paying* a sitting juror. There was a shocking degree of informality during *voir dire,* particularly on behalf of the prosecuting attorney who asked Juror Rachal to extend his regards with her boss. Even the Court was convinced that Rachal's employment would bar her from sitting on the jury.

To avoid arriving at this conclusion, the Louisiana Supreme Court simply sidestepped the issue in its entirety. The Court made no finding on whether counsel was deficient under *Strickland* or whether Juror Rachal's employment with the District Attorney was of the sort that engendered an unacceptable risk of implied bias, even against the juror's best intentions. The Court ignored the legions of settled,

clearly established authority which holds—as Justice O'Connor suggested—that in extreme situations such as where "the juror is an actual employee of the prosecuting agency," a finding of implied bias is justified. Nowhere in the Court's May 5, 2023 judgment did it even consider the possibility that a sitting juror with a pecuniary interest in the outcome might offend the Constitution. In attempting to distinguish its ruling from the Fifth Circuit's position in *Virgil*, the Louisiana Supreme Court simply noted that *Virgil*'s jurors "unequivocally expressed" their bias, while making no findings regarding Juror Rachal.

Had the Louisiana Supreme Court properly addressed Juror Rachal's implied bias, her participation would have been analogous to the admittedly partial jurors in *Virgil*. Her implied bias as the personal secretary of District Attorney Bo Duhé would have resulted in a biased jury that could not constitutionally convict. The Louisiana Supreme Court's denial of Petitioner's state collateral attack was contrary to the U.S. Supreme Court's holding in *Strickland* and "left a defect in the trial process that 'undermine[s] confidence in the outcome.'" *Virgil*, 446 F.3d at 614.

The U.S. District Court also erred in concluding that the state supreme court "was reasonable in finding a lack of prejudice under *Strickland* because of the overwhelming evidence of [Appellant's] guilt presented at trial." ROA.561. Respectfully, Judge David C. Jospeh did not preside of Appellant's state trial; Judge Anthony Thibodeaux did. And Judge Thibodeaux, as the only jurist present for the

38

duration of Appellant's trial, did not share the District Court's assurance that the evidence supported a conviction for Second-Degree Murder.

> The question then: Did [Appellant] intentionally shoot the person? It's been said he went there with the intent to shoot the victim. I do know that he arrived there, and the matron of the residence was told his purpose and eventually made the victim available to Mr. Chandler. She knew Mr. Chandler. And certainly, if she thought that he was intended to kill someone, why should she allow that to happen? Why would the victim walk towards Mr. Chandler if he thought Mr. Chandler was there to kill him? And why did Mr. Chandler kill him? All of these facts and circumstances strongly indicate initially no intent to kill. He was just acting like a street punk. And that kind of conduct, when you're acting extraordinary and abnormal, this is what results.

> Oh, you are responsible for what happened…and this is where you end up, in an orange suit, looking at a second degree murder conviction. Conviction.

> That's a different world. And the people who read you best, the people who read Mr. Chandler best, knowing whether or not they felt he intended to kill him, were the same people that walked up to him and accosted him, rightfully so. And said, "Oh, you're going to point a gun at me? You're going to put my family in jeopardy," and grabbed the gun. At no time was that victim ever scared that you were going to shoot him, because he knew you best. It's his actions that lead me to believe that you didn't intend to kill him. He knew you didn't intent to kill him. Y'all just foolishly got involved in a gun—battle over a gun. He pulled and you pulled, and the weak point was the trigger…

> The Court does find that the jury could have reached, and should have reached, a finding that Mr. Douglas [sic] Chandler did commit a homicide without intent to cause death or great bodily harm while engaged in the perpetration or attempted perpetration of a felony— namely, aggravated assault, and therefore find you guilty of manslaughter.

ROA.1262-1264.

Consequently, the evidence against Appellant was not so overwhelming that the seating of a biased juror—if not grounds for automatic reversal as counselled by the U.S. Supreme Court—would nonetheless engender sufficient prejudice to warrant relief under *Strickland*. The evidence against Petitioner was uncompelling. The jury's vote was never revealed. The bias of Juror Rachal is supplied by law. Therefore, the District Court erred in denying Habeas relief.

## CONCLUSION

Appellant prays that this Court vacates his conviction of Second-Degree Murder and Felon in Possession of a Firearm and remands this matter to the state trial court for further proceedings, or for such relief as to which he may be justly entitled.

**H2 LAW, LLC**

By: /s/ Justin Caine Harrell
**JUSTIN CAINE HARRELL, ESQ.**
LSBA 31471
Attorney for Petitioner-Appellant
1100 Poydras Street, Suite 2900
New Orleans, Louisiana 70163
504-585-7329
504-324-0145 *facsimile*

## <u>CERTIFICATE OF SERVICE</u>

I certify that that on April 7, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such

filing (NEF) to counsel(s) of record by means of the Court's electronic filing system.

In addition, a copy was forwarded by U.S. Mail, postage pre-paid, to the following:

Mr. Charles Chandler, DOC No. 561439
Louisiana State Penitentiary
Angola, Louisiana 70712

By: /s/ Justin Caine Harrell
**JUSTIN CAINE HARRELL, ESQ.**
LSBA 31471
Attorneys for Defendant-Appellant
1100 Poydras Street, Suite 2900
New Orleans, Louisiana 70163
504-585-7329
504-324-0145 *facsimile*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Appellant's Brief is in compliance with the limitations imposed by Fed.R.App.Pro. 32(a)(7) and 5th Cir. R. 32.2. The instant brief consists of 33 pages and 8,034 words, exclusive of the table of contents, table of authorities, statement regarding oral argument, and certificates of interested parties, service, and compliance.

By: /s/ Justin Caine Harrell
**JUSTIN CAINE HARRELL, ESQ.**
LSBA 31471
Attorneys for Defendant-Appellant
1100 Poydras Street, Suite 2900
New Orleans, Louisiana 70163
504-585-7329
504-324-0145 *facsimile*